2026 IL App (1st) 260562-U

FOURTH DIVISION
Order filed: July 16, 2026

No. 1-26-0562B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 26 CR 0202801 |
| | ) | |
| BRETT SMITH, | ) | Honorable |
| | ) | Steven Jay Rosenblum, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE QUISH delivered the judgment of the court.
Presiding Justice Navarro and Justice Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court's orders denying defendant pretrial release and denying his motion for relief are affirmed.

¶ 2    Defendant Brett Smith appeals from the orders of the circuit court of Cook County denying him pretrial release pursuant to Section 110-6.1 of the Code of Criminal Procedure, commonly referred to as the Pretrial Fairness Act ("Act") (725 ILCS 5/110-6.1 (West 2026)), and denying his motion for relief. On appeal, defendant argues that (1) the State improperly relied on defendant's prior cases that were expunged or sealed during its proffer; (2) the circuit court improperly used

defendant's prior cases as propensity evidence; and (3) the circuit court erred in finding that no conditions of release could mitigate any threat that defendant posed. For the following reasons, we affirm.

¶ 3    Defendant was arrested and charged with aggravated criminal sexual abuse of a victim under age 18 on January 29, 2026. Defendant appeared before a first judge on January 30, 2026, and the State filed a petition for pretrial detention. The circuit court granted the State's petition and ordered defendant detained before trial.

¶ 4    Defendant was then charged by superseding indictment with two counts of aggravated criminal sexual abuse, one count of attempted aggravated criminal sexual abuse, one count of a continuing financial crime enterprise, and five counts of wire fraud. The first judge subsequently recused himself and the case was assigned to Judge Rosenblum. Defendant filed a motion to vacate the original detention order and sought a new detention hearing because the first judge recused himself after realizing that he may have represented defendant in a prior case. Judge Rosenblum agreed to hold a new detention hearing.

¶ 5    At that hearing on March 6, 2026, the State made the following proffer. Defendant was 43 years old and, since 2002, worked intermittently as an elementary school substitute teacher and private tutor in Illinois, Indiana, and Arizona. The alleged victim, N.P., was 9 years old. N.P.'s mother searched for tutoring services for N.P. on the Nextdoor app and located defendant's profile under the name "B.J." Defendant's profile did not contain his full name. N.P.'s mother interviewed defendant and hired him.

¶ 6    Defendant came to N.P.'s house and tutored N.P. approximately 13 or 14 times. N.P.'s mother initially paid defendant in cash and then switched to using Zelle for payment. N.P.'s mother

noticed that defendant's Zelle account was associated with the name "Brett Smith." N.P.'s father searched that name and found "numerous disturbing news articles on someone by the name of Brett Smith formerly known as Brett Zagorac" which involved "numerous offenses against children as well as fraud and name changes."

¶ 7    N.P.'s mother went to the Orland Park Police Department on January 7, 2026. N.P.'s father called her while she was at the police station and "[N.P.] was yelling that the defendant touched him during the tutoring sessions." N.P. and his father went to the police station. N.P.'s father stated that N.P. told him that defendant rubbed N.P.'s back under his shirt while N.P. was reading during every tutoring session, which N.P thought was "strange." N.P.'s mother told police that, during one tutoring session, she walked into the dining room and saw N.P.'s pen "resting on the defendant's upper thigh area" and "saw [N.P.] reach for the pen and heard [N.P.] ask the defendant, Why did you put my pen there?"

¶ 8    N.P.'s mother returned to the police station on January 8, 2026 after speaking to N.P. again. N.P. told her that defendant would rub his back under the shirt and slide his hand down to N.P.'s buttocks. N.P. told his mother that he knocked defendant's hand away and defendant gave him a sticker. N.P. also told his mother that defendant put N.P.'s pen on top of defendant's groin and asked N.P. to grab the pen.

¶ 9    N.P. participated in a forensic interview at the Children's Advocacy Center. During the interview, N.P. stated that the tutoring sessions occurred in the dining room of his home and that defendant would sit very close to him during the sessions. N.P. stated that defendant rubbed N.P.'s back underneath his shirt starting with the first tutoring session. Defendant gave N.P. stickers in exchange for information about his parents, including their ages. N.P. also stated that, during the

first session, defendant scratched the top of N.P.'s back, lowered his hand beneath the elastic strap on the waistband of N.P's underwear, and touched N.P.'s buttocks.

¶ 10    During one tutoring session, defendant showed N.P. pictures of other children that he tutored. During another session, defendant rubbed the back of N.P.'s neck, then moved his hand down into the back of N.P.'s pants under the underwear and rubbed N.P.'s buttocks. During the last tutoring session, defendant took N.P.'s pen and put it on top of defendant's clothed penis. N.P. asked defendant why he put the pen there, and defendant stated, not verbatim, that "he'd talk about it next time." N.P. and his mother separately identified defendant in two photo lineups. Defendant later turned himself in to the Orland Park Police Department.

¶ 11    As the State began to discuss defendant's background, defense counsel objected, asserting that, under the expungement statute (20 ILCS 2630/5.2 (West 2026)), the State was not allowed to use expunged cases for any purpose. The court acknowledged the objection, but stated it would need to hear "what they are going to be talking about" before ruling. The court acknowledged the State was able to use proof of other crimes evidence in a sex offense, and that "[w]hether they are expunged or not does not affect the use of proof of other crimes evidence, not that I'm aware of." The State agreed that it would inform the court regarding the result of each prior incident, including whether any criminal record was expunged.

¶ 12    The State proffered that while defendant worked as a substitute teacher in Indiana in 2002, multiple children reported inappropriate touching by defendant, and defendant was ultimately banned from that school. On May 23, 2002, defendant was arrested and charged in Lake County, Indiana with battery based on an allegation that he rubbed male students' backs under their shirts. The case was ultimately dismissed.

¶ 13    In 2005, defendant was arrested and charged with felony child molestation in Lake County, Indiana. The allegation was that, while working as a substitute teacher, defendant placed his hand under a male student's shirt and rubbed the student's back, then placed his hand on the student's sex organ over the student's clothes. The case was ultimately dismissed because the victim was unable to testify, as he became physically ill during a discussion about testifying. Defendant successfully petitioned to have that case expunged in 2011.

¶ 14    Later in 2005, defendant was arrested in Naperville, Illinois and charged with 13 counts of criminal sexual abuse involving 13 different children as well as multiple counts of battery. The allegations were that, while defendant was a substitute teacher in multiple elementary schools in Naperville, he placed his hand under students' shirts and rubbed their backs. On October 15, 2007, defendant pled guilty to a single misdemeanor battery count and was sentenced to 20 days in jail and two years' probation.

¶ 15    In February 2010, defendant was arrested and charged with felony child molestation in Porter[1] County, Indiana. The allegations of that case were that defendant advertised himself as a private tutor under the name "B.J. Wilhelm." While tutoring a five-year-old student, defendant placed his hand under the victim's shirt and rubbed the victim's back, then placed his hand under the waistband of the victim's underwear and rested his hand on the victim's buttocks. Defendant was ultimately found guilty of misdemeanor battery and sentenced to 100 days in jail.

¶ 16    While defendant was on pretrial release in the Porter County case, one condition of his release was that he was not allowed to have contact with children under the age of 18. While that

---

[1] The State's proffer stated that the charges were in Porter County, Indiana. Defendant's motion for relief asserted that the charges were actually in Portage County, Indiana.

case was pending, defendant was arrested for misdemeanor battery in Evanston. The Evanston case involved allegations that defendant rubbed the back of a seven-year-old victim who defendant tutored. Defendant pled guilty to battery and was sentenced to 180 days in jail and one-year of conditional discharge. The records of the Evanston case were later sealed.

¶ 17    In 2015, defendant was arrested for aggravated criminal sexual abuse and grooming in Wilmette. The State alleged that defendant rubbed the minor victim's back over the shirt and rubbed the victim's penis over the clothes. Defendant was a private tutor and babysitter for the victim. Defendant pled guilty on August 30, 2017 to an amended misdemeanor battery charge and served a sentence of 18 months' probation, which was terminated satisfactorily.

¶ 18    In 2016, defendant was arrested in Chicago for aggravated criminal sexual abuse. The State alleged that defendant placed his hand under the eight-year-old victim's shirt and rubbed his back. Defendant also pulled the victim on to his lap during tutoring sessions. The Chicago case was dismissed as part of defendant's plea to the Wilmette case.

¶ 19    In 2019, defendant legally changed his name from Brett Zagorac to Brett Smith while living in Arizona. Defendant petitioned for a fingerprint card to allow him to be hired as a substitute teacher in Arizona. Defendant later was arrested for felony fraudulent scheme and forgery as a result of information provided in his application for the fingerprint card. Defendant pled guilty to an amended misdemeanor forgery charge and received probation.

¶ 20    Around the same time as defendant's arrest in this case, in January 2026, he was arrested and charged with misdemeanor battery in Evergreen Park. The State alleged that, while defendant was working as a substitute teacher in a second grade classroom, defendant stood behind one of the students and made contact with the student's body and rubbed the student's shoulders and back.

The Evergreen Park case was still pending at the time of the detention hearing. Defendant was also being investigated by DCFS for similar incidents while he was a substitute teacher at a school in Blue Island.

¶ 21    The State argued that the proof was evident and presumption great that defendant committed the offense of aggravated criminal sexual abuse as N.P. and his mother identified defendant after N.P. disclosed the alleged incidents to his parents and in a forensic interview. The State argued that defendant posed a real and present threat to N.P. as well as other children in the community and that no conditions of release would mitigate that threat. The State argued that defendant demonstrated that he will not abide by conditions of release, as evidenced by his criminal history and his history of violating conditions of his release, including his arrest in Illinois while he was on pretrial release in the Porter County case. The State also pointed out that defendant used the nickname "B.J." to intentionally mislead and deceive parents searching for tutors, and that defendant had a "history using fake names making it difficult for parents and community members to learn his full criminal history." The State argued that he repeatedly sought out positions as substitute teachers using different names in different jurisdictions across state lines. The State argued that defendant knew where N.P. lived, and that even if defendant was restricted to his home, there would be no way to monitor who was coming into his home if he attempted to tutor children there.

¶ 22    Defense counsel acknowledged that defendant "has an issue with rubbing backs," but argued that none of defendant's prior charges resulted in convictions for a sexual offense. Counsel stated that defendant applied for a name change "because he had these cases and because of the internet" and he wanted a "fresh start." Counsel stated that defendant's forgery charge was the

result of defendant not disclosing all aliases he used on his original application for the fingerprint card.

¶ 23     Counsel stated that the condition of defendant's release in the Porter County case was to not have unsupervised contact with minors, and the violation of his conditions in that case was vacated because the contact that resulted in the Evanston case was supervised. Counsel stated that defendant was on electronic monitoring for the Wilmette case for two years and had no violations.

¶ 24     Counsel asserted that the 2002 Lake County case resulted in a not guilty finding by a jury, the 2005 Lake County case was dismissed, and the allegations in the Naperville case were deemed to be unfounded by DCFS. Counsel argued that most of defendant's cases were based solely on back rubbing and that any allegations of sexual conduct were ultimately unfounded. Counsel further argued that N.P.'s account of the incident added details after his parents read about previous allegations against defendant on the internet. Counsel also stated that defendant had a sex offender evaluation performed in 2017, and the evaluator concluded that defendant had no interest in adolescents.

¶ 25     Counsel argued that there were sufficient conditions to mitigate any threat posed by defendant. Counsel represented that defendant would not tutor because "the State has suspended his license anyway" and that electronic monitoring or other conditions would mitigate any threat posed by defendant.

¶ 26     The State responded that defendant demonstrated that pending criminal charges has not deterred him from tutoring in the past and he repeatedly tried to gain contact with children across multiple states using multiple names. The State argued that, if defendant were released, he would

have two days of required movement under the electronic monitoring statute and that there was no way to prevent him from having contact with children.

¶ 27    The circuit court stated that it would not consider the two cases that were expunged, particularly since neither led to a conviction, though it clarified that it was not ruling on the admissibility of evidence of those incidents at trial. The court acknowledged that there was a long history involving "conduct done by the defendant" over the last 20 years.

¶ 28    The court found that there was clear and convincing evidence that the proof was evident and the presumption great that defendant committed a detention-eligible offense of aggravated criminal sexual abuse as N.P.'s forensic interview provided evidence that matched defendant's conduct. The court found that defendant posed a real and present threat to N.P. and the community, given that defendant used multiple different names while continuing to engage in the same type and pattern of conduct with young children despite multiple convictions for similar conduct, even if he had not been convicted of a sex offense.

¶ 29    The court also found that there were no conditions of release sufficient to mitigate the threat posed by defendant because defendant repeatedly engaged in similar conduct despite multiple arrests and convictions under different aliases, including while on release for the Porter County case. The court found that, based on defendant's full history, conditions such as electronic monitoring or curfew would not control defendant's conduct or his access to young children. The court ordered defendant detained pending trial.

¶ 30    Defendant filed a motion for relief, arguing that (1) the State's proffer improperly relied on sealed and expunged cases; and (2) the State failed to establish that no condition or combination of conditions would mitigate any threat posed by defendant. The motion asserted that all cases

proffered by the State during the detention hearing had been expunged or sealed, and provided additional background regarding the disposition of the proffered cases, asserting that a jury found defendant not guilty in multiple cases. The motion attached multiple exhibits, including (1) documents showing that a jury found defendant not guilty of battery in one Lake County case, and that the other Lake County case was dismissed; (2) multiple sex offender evaluations of defendant indicated that he did not have abnormal sexual interests; and (3) evidence that multiple DCFS investigations between 2005 and 2017 involving defendant were determined to be unfounded.

¶ 31    At the hearing on defendant's motion for relief, defense counsel argued that all cases mentioned during the detention hearing "should not have been mentioned" as they were "sealed or expunged." Counsel asserted that the State repeatedly "abandoned" prosecution of defendant in several cases and the State's proffer of facts from those cases "shouldn't be given any credibility." Counsel finally argued that the statute requiring movement while on electronic monitoring did not require unfettered movement and it was sufficient to mitigate any threat posed by defendant.

¶ 32    The State argued that findings of not guilty were admissible as other crimes evidence and thus could be considered by the court in its detention decision. The State also argued that electronic monitoring would not prevent defendant from tutoring children during his movement time or prevent children from coming to defendant's home.

¶ 33    The court denied the motion for relief, finding that expunging or sealing records of a criminal case did not "erase what an individual does" and did not prevent the State from presenting witnesses that could testify to the facts of other incidents, particularly other crimes evidence in a sexual abuse case. The court found that all cases were relevant to defendant's dangerousness to the community as part of the detention decision. The court also found that defendant's history of

allegations against him demonstrated that he was unable to conform his conduct or "stop being a tutor or a substitute teacher" and he pled guilty to certain batteries, which was "not normal conduct of an adult." This appeal follows.

¶ 34     Defendant elected to file a memorandum on appeal as a supplement to his motion for relief. See Ill. Sup. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). In his memorandum, defendant argues that (1) the circuit court improperly relied upon expunged and sealed records in its detention decision; (2) the circuit court improperly used defendant's prior cases as propensity evidence; and (3) the circuit court failed to conduct an individualized assessment of conditions of release.

¶ 35     Pretrial release is governed by the Act, which presumes that a defendant is eligible for pretrial release, and that release may only be denied in certain limited situations. 725 ILCS 5/110-2(a); 725 ILCS 5/110-6.1 (West 2026). Upon the filing of a verified petition requesting the denial of  pretrial release, the State has the burden to prove by clear and convincing evidence that: (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense; (2) the defendant poses a real and present threat to the safety of any person or the community, based on the specific articulable facts of the case, by conduct which may include a forcible felony; and (3) no condition or combination of conditions of pretrial release set forth in section 110-10(b) can mitigate the real and present threat posed by the defendant to the safety of any person or persons or the community, based on the specific articulable facts of the case, for certain offenses, or the defendant's willful flight. 725 ILCS 5/110-6.1(e)(1)-(3) (West 2026).

¶ 36     A trial court may order a defendant detained pending trial if it finds that the State has met its burden as to all three propositions. *People v. Morgan*, 2025 IL 130626, ¶ 41. When the State presents evidence by proffer rather than by live testimony, as in this case, we review the circuit

court's decision to detain the defendant *de novo*. *Id.* ¶ 54. We review the evidence proffered by the State and any other documentary evidence with "no deference to the decision of the circuit court." *Id.* ¶ 22.

¶ 37 Defendant does not challenge the first element, that the proof is evident or the presumption great that he committed a qualifying offense. Presumably related to the second element, defendant argues that the circuit court improperly relied on expunged and sealed records when deciding to detain defendant. Defendant argues that a court order was required to access records of those cases under the Criminal Identification Act (20 ILCS 2630/5.2 (West 2026)), that the State failed to obtain such an order, and therefore, the State was not permitted to use evidence of the prior cases against him.

¶ 38 We initially note that the record is not clear as to which of defendant's prior cases were sealed or expunged. At the detention hearing, defense counsel informed the Court that only the 2002 Lake County case and 2016 Chicago case had been expunged. The parties seemed to agree that the 2010 Evanston case was sealed. Defendant asserts in his memorandum and his motion for relief that *all* prior cases had been sealed or expunged, but cites no pages of the record containing such evidence and we found no such documentation or other support for this proposition in the record. Thus, we reject his characterization that all of defendant's prior cases had either been expunged or sealed.

¶ 39 Defendant bases his argument on the requirement of the Criminal Identification Act that sealed records can only be accessed via a court order. See 20 ILCS 2630/5.2(a)(1)(K) (West 2026). He argues that the State did not obtain any such order, and therefore, the records should not have been used. However, the Criminal Identification Act only relates to records of the underlying

arrest. *Id.* As pointed out by the circuit court, the sealing or expungement of records of a prior criminal case does not erase all evidence of the incident, the underlying facts of prior incidents, the admissibility of such evidence at trial or the witnesses' memory of the events. See *People v. Pizzo*, 2022 IL App (2d) 210073-U, ¶ 103.

¶ 40 Further, the Act allows for relaxed evidentiary rules during pretrial detention hearings. Section 110-6.1(f)(2) allows the State to proffer evidence that is "based upon reliable information." 725 ILCS 5/110-6.1(f)(2) (West 2026). Section 110-6.1(f)(5) states that "[t]he rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." 725 ILCS 5/110-6.1(f)(5) (West 2026). Lastly, section 110-6.1(g) allows the court, when making a determination of a defendant's dangerousness, to consider defendant's "history and characteristics," including evidence of prior criminal history "indicative of *** abusive[] or assaultive behavior" which may include testimony or documents received in juvenile proceedings, criminal, quasi-criminal or other proceedings or social history that "tends to indicate a[n] *** abusive, or assaultive nature." 725 ILCS 5/110-6.1(g) (West 2026).

¶ 41 We agree with the State that, based on these provisions, the circuit court was allowed to consider evidence of defendant's prior conduct toward children regardless of the outcome of any prior criminal proceeding, including expunged and sealed cases. 725 ILCS 5/110-6.1(f)(2), (f)(5); 725 ILCS 5/110-6.1(g). In line with these provisions, the State's proffer included evidence of defendant's history, which indicated a tendency of abusive behavior towards children, which is relevant to the circuit court's evaluation of defendant's dangerousness. 725 ILCS 5/110-6.1(g). Therefore, we reject defendant's argument.

¶ 42    Defendant also argues that the use of sealed or expunged records violates his due process rights because, since the records were expunged or sealed, he cannot rebut the allegations made by the State related to those cases. Defendant did not raise this argument in his motion for relief and cites no authority in support in his memorandum. Therefore, he has waived this argument. See Ill. Sup. Ct. R. 604(h)(2) (eff. Apr. 15, 2024) ("Upon appeal, any issue not raised in the motion for relief, other than errors occurring for the first time at the hearing on the motion for relief, shall be deemed waived."); Ill. Sup. Ct. R. 604(h)(7) (memorandum on appeal "must contain sufficient detail to enable meaningful appellate review, including the contentions of the appellant and the reasons therefore and citations of the record and any relevant authorities.")

¶ 43    Next, defendant argues that the circuit court improperly used evidence of prior acts as propensity evidence in violation of 725 ILCS 5/115-7.3 (West 2026) and contends the court improperly treated his prior arrests and charges as evidence that he had a propensity to commit sexual crimes. Defendant did not raise this argument in his motion for relief, and thus, he has waived it. Ill. Sup. Ct. R. 604(h)(2).

¶ 44    Even if this argument was not waived, it lacks merit. As discussed, pretrial detention hearings involve relaxed evidentiary rules, and evidence of defendant's prior criminal and social history are relevant to the court's determination of a defendant's dangerousness. 725 ILCS 5/110-6.1(f)(5); 725 ILCS 5/110-6.1(g). Additionally, the circuit court explicitly stated that it was not using defendant's prior cases "as proof that he's committed this offense," suggesting that the court considered defendant's prior cases as indicative of his dangerousness, rather than as propensity evidence to show that he committed the charged offense.

¶ 45    Lastly, defendant contends that the circuit court failed to conduct an individualized assessment of conditions of release. In determining which, if any, conditions of pretrial release will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of defendant's compliance with all the conditions of pretrial release, the court "shall, on the basis of available information, take into account such matters as:" (1) the nature and circumstances of the charged offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including his character, physical and mental condition, community ties, conduct and criminal history, (4) the nature and seriousness of the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case that would be posed by the defendant's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. 725 ILCS 5/110-5(a) (West 2026).

¶ 46    Defendant argues that conditions such as home confinement and electronic monitoring with GPS, "a prohibition on the use of internet applications," and an order to stay away from N.P. are sufficient to mitigate any threat he poses, and that the circuit court failed to meaningfully address why those conditions were inadequate. He asserts that he has a "history of compliance with prior conditions and other court orders" and any presumption that he would not comply with terms of release in this case is not supported by the record.

¶ 47    We cannot find that defendant's proposed conditions are adequate to address the risk that he poses. While defendant disputes that he has ever violated terms of release, the fact that he continues to tutor children despite numerous arrests and multiple convictions based on similar conduct demonstrates that he is determined to gain access to young children. While defendant is

correct that such access would be limited were he placed on electronic monitoring, it would not eliminate the opportunities for such access or prevent him from tutoring children in his own home. Defendant also proposed a ban on internet applications, but the threat that he poses is not necessarily reliant on internet access. A no-contact order against N.P., which from the record appears to already have been entered, would not prevent defendant from attempting to gain access to other children.

¶ 48    Defendant argues that the circuit court placed too much weight on defendant's decision to change his name and using aliases, as it has no impact on whether conditions of confinement such as electronic monitoring would be adequate. We find defendant's use of different names to tutor children is relevant, as it demonstrates that defendant was determined to continue tutoring young children despite his history and, by using different names, sought to hide that history from parents seeking tutors for their children. We disagree with defendant's assertion that conditions such as electronic monitoring would mean that defendant "cannot meet anyone in person, regardless of what name he uses online," given that any condition would not monitor who came to defendant's home, or who defendant could interact with while he was allowed the required movement time.

¶ 49    Defendant also argues that his history demonstrates that he would comply with any order not to contact individuals under the age of 18. This claim is rebutted by the record. While defendant disputes whether his actions in the Evanston case violated the specific terms of his release in the Porter County case, the fact remains that defendant, while on release for allegedly improperly touching a young boy, continued to seek opportunities to be near young children and engage in similar conduct. His history shows that he has not been deterred by multiple arrests and convictions for similar conduct over two decades. "'[A] defendant's release on conditions depends on the court

having confidence that the defendant will comply with those conditions.'" *People v. Gage*, 2026 IL App (1st) 252526-U, ¶ 31 (quoting *People v. Vincent*, 2024 IL App (4th) 240218, ¶ 6). Based on the specific articulable facts and defendant's prior disregard for the conditions of pretrial release, we have no such confidence here.

¶ 50     Defendant next argues that the circuit court made a "superficial disposal of the proposed conditions" and did not meaningfully engage with the conditions proposed by defense counsel. As our review is *de novo*, we owe no deference to the precise reasoning of the circuit court and may affirm based on our independent assessment of the record. *Morgan*, 2025 IL 130626, ¶ 22, 54. As discussed above, we find that the conditions proposed by defendant were not sufficient to mitigate the threat he poses.

¶ 51     For the foregoing reasons, we affirm the orders of the circuit court.

¶ 52     Affirmed.